# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF NORTH CAROLINA
# CHARLOTTE DIVISION
# 3:11-cv-341-RJC

| | |
|---|---|
| LOY ALEXANDER WRIGHT, )<br>)<br>Petitioner, )<br>)<br>vs. )<br>)<br>ALVIN W. KELLER, JR., )<br>)<br>Respondent. )<br>_____ ) | **ORDER** |

**THIS MATTER** comes before the Court on Respondent's Motion for Summary Judgment, (Doc. No. 4), and on Petitioner's Motion to Ask Court to Proceed (or) to Rule and Answer Questions Brought Forth, (Doc. No. 28).

## I.   BACKGROUND

Pro se Petitioner Loy Alexander Wright is a prisoner of the State of North Carolina, who, on July 28, 2009, in Mecklenburg County Superior Court, was convicted in a jury trial of selling cocaine, and possession with intent to sell or deliver cocaine, in case 08 CRS 219683. Petitioner then pled guilty to habitual felon status, in case 08 CRS 54573, and was sentenced to 151-191 months imprisonment. On July 20, 2010, the North Carolina Court of Appeals issued an unpublished opinion finding no error. State v. Wright, 205 N.C. App. 469, 698 S.E.2d 201 (2010).

Petitioner was represented at trial by Chiege Okwara and on appeal by Michael E. Casterline. An error was discovered in Petitioner's prior record level, and he was re-sentenced on March 25, 2011 to 125-159 months imprisonment. (Doc. No. 5-4: Exhibit 3). Petitioner was represented at re-sentencing by Laura Grimaldi.

Petitioner dated a pro se motion for appropriate relief ("MAR") April 14, 2011, and filed it in Mecklenburg County Superior Court. (Doc. No. 1-1), which was summarily denied (Doc. No. 1 at 17). Petitioner filed an Amended MAR on June 16, 2011 (Doc. No. 1 at 18).

On June 17, 2011, Petitioner filed a pro se certiorari petition in the North Carolina Court of Appeals. (Doc. No. 5-5, Exhibit 4). The state filed its response on June 30, 2011. (Doc. No. 5-6, Exhibit 5). Certiorari was denied on July 6, 2011. (Doc. No. 5-7, Exhibit 6). On July 7, 2011, Petitioner, apparently unaware that certiorari had been denied, filed an amendment responding to the state's response. (Doc. No. 5-8, Exhibit 7). The state again responded on July 13, 2011. (Doc. No. 5-9, Exhibit 8). The amended certiorari petition was denied on July 15, 2011. (Doc. No. 5-10, Exhibit 9).

Petitioner placed the petition in the prison mail system on July 15, 2011, and it was stamp-filed in this Court on the same date. See (Doc. No. 1 at 14). On August 9, 2011, Respondent filed the pending motion for summary judgment. (Doc. No. 4). Also on August 9, 2011, this Court entered an Order pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), granting Plaintiff thirty days to respond to the summary judgment motion. (Doc. No. 6). On September 19, 2011, Petitioner filed a response to the summary judgment motion in the form of a Declaration. (Doc. No. 8).

On October 30, 2011, Petitioner filed a "Motion for Consideration for (2) two legislature sentencing changes first change 2009 second change is for December 1, 2011, the Justice Reinvestment Act." (Doc. No. 14). On November 18, 2011, this Court entered an Order construing the motion to amend as a timely motion to amend the petition. (Doc. No. 15). Because Petitioner had not raised this claim in the state courts, this Court considered the petition a "mixed petition" and dismissed the petition without prejudice, but granted Petitioner the option

of abandoning his non-exhausted claims so the Court could rule on his exhausted claims. (Id.). On December 14, 2011, Petitioner filed a motion to abandon his unexhausted claims and for relief under Rule 60(b) from the Court's judgment dismissing the petition without prejudice. (Doc. No. 20). On December 15, 2011, this Court granted Petitioner's motion to abandon his unexhausted claims and for relief from judgment, thus reopening the case. (Doc. No. 21). Therefore, this Court now addresses Respondent's motion for summary judgment filed on August 9, 2011.

The North Carolina Court of Appeals summarized the facts from Petitioner's trial as follows:

> The State's evidence tended to show that on 30 October 2007 at approximately 11:55 a.m. Patrol Officer Kimberly Blackwell and Detective Jorge Olmeda of the Charlotte Mecklenburg Police Department were working undercover in the Pine Valley neighborhood attempting to purchase illegal drugs. The officers were driving in an unmarked car when they were flagged down by a black male who asked them what they wanted. Officer Blackwell asked the man for twenty dollars worth of "hard" or crack cocaine. The man then told the officers to pull over, and he would go get it. The man walked up to a house on Longleaf Drive and engaged in a conversation with defendant. Defendant then walked toward the officers' car and waved them up to him. Detective Olmeda drove the car toward defendant, and defendant approached Officer Blackwell who was sitting in the front passenger seat. Defendant asked if they had given the money to the other man, and Officer Blackwell replied that they had not. Officer Blackwell asked defendant if he had the "twenty dollars worth," and defendant replied, "yeah I got it." Defendant then pulled out and handed Officer Blackwell a napkin with what looked like a broken crack rock, and Officer Blackwell gave defendant twenty dollars. Defendant told them he would give them thirty dollars worth because it was broken. He told them to pull up and he would "come back with another dime."
>
> The officers moved the car up to turn around, looked at the napkin's contents, and realized the substance was fake. Less than a minute later, defendant approached Detective Olmeda, and they had a conversation about the contents of the napkin being fake. Defendant then handed Detective Olmeda another rock of crack cocaine, and the fake crack was given back to defendant. The officers took the crack cocaine purchased from defendant to Property Control and turned it in

3

as evidence. A forensic chemist in the police department's crime laboratory tested the substance and determined the substance was cocaine, weighing 0.09 grams.

Defendant moved to dismiss the charges at the close of the State's evidence. Defendant presented no evidence, and renewed his motion at the close of all evidence. The trial court denied defendant's motions.

State v. Wright, 205 N.C. App. 469, 698 S.E.2d 201 (2010).

Petitioner brings the following grounds for relief in his § 2254 petition: (1) he received ineffective assistance of trial and appellate counsel; (2) he was subjected to vindictive prosecution in violation of equal protection and due process, when indicted as a habitual felon; (3) he was subjected to selective prosecution; and (4) the prosecution did not prove each essential element of the crime for which Petitioner was convicted, nor was the lack of sufficient evidence brought up on direct appeal.

## II. STANDARD OF REVIEW

A. Summary Judgment Standard

Summary judgment is appropriate in those cases where there is no genuine dispute as to any material fact, and it appears that the moving party is entitled to judgment as a matter of law. FED. CIV. P. 56(c)(2); United States v. Lee, 943 F.2d 366, 368 (4th Cir. 1991). Any permissible inferences to be drawn from the underlying facts must be viewed in the light most favorable to the party opposing the motion. Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587–88 (1986). Where, however, the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, disposition by summary judgment is appropriate. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248–49 (1986).

4

B.  Section 2254 Standard

In addition to the motion for summary judgment standard set forth above, this Court must also consider the Petition for Writ of Habeas Corpus under the requirements set forth in 28 U.S.C. § 2254. Section 2254(d) provides that:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d); see also Tice v. Johnson, 647 F.3d 87, 103 (4th Cir. 2011).

A claim is considered "adjudicated on the merits" when it is "substantively reviewed and finally determined as evidenced by the state court's issuance of a formal judgment or decree." Young v. Catoe, 205 F.3d 750, 755 (4th Cir. 2000) (quoting Thomas v. Davis, 192 F.3d 445, 455 (4th Cir. 1999)). A state court adjudication is "contrary to" clearly established federal law only if "the state court arrives at a conclusion opposite to that reached by [the United States Supreme] Court on a question of law or if the state court decides a case differently than [the United States Supreme] Court has on a set of materially indistinguishable facts." Williams v. Taylor, 529 U.S. 362, 412-13 (2000). "It is not enough for us to say that, confronted with the same facts, we

5

would have applied the law differently; we can accord [the petitioner] a remedy only by concluding that the state court's application of the law in his case was objectively unreasonable." See Tice, 647 F.3d at 103 (citing Williams v. Ozmint, 494 F.3d 478, 483-84 (4th Cir. 2007)). "[W]e will not discern an unreasonable application of federal law unless 'the state court's decision lies well outside the boundaries of permissible differences of opinion.'" Id. at 108 (quoting Goodman v. Bertrand, 467 F.3d 1022, 1028 (7th Cir. 2006)).

In addition, "[a] federal habeas court will not review a claim rejected by a state court if the decision of [the state] court rests on a state law ground that is independent of the federal question and adequate to support the judgment." Walker v. Martin, 131 S.Ct. 1120, 1127 (2011) (internal quotations and citations omitted). "The state-law ground may be a substantive rule dispositive of the case, or a procedural barrier to adjudication of the claim on the merits." Id. (citation omitted). A procedural default also occurs "when a habeas petitioner fails to exhaust available state remedies and the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred." Hyman v. Keller, No. 10-6652, 2011 WL 3489092, at *9 (4th Cir. July 21, 2011) (quoting Breard v. Pruett, 134 F.3d 615, 619 (4th Cir. 1998)); see also 28 U.S.C. § 2254(b)(1)(A).

Section 2254's exhaustion requirement demands that a petitioner give "the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." Larry v. Branker, 552 F.3d 356, 366 (4th Cir. 2009) (quoting O'Sullivan v. Boerckel, 526 U.S. 838, 845 (1999)). However, a petitioner may overcome a finding of procedural default by showing cause and prejudice arising from the

asserted constitutional error. McCarver v. Lee, 221 F.3d 583, 591-92 (4th Cir. 2000). To show "cause," a petitioner may make "a showing that the factual or legal basis for the claim was not reasonably available to counsel." Id. at 591 (quoting McCleskey v. Zant, 499 U.S. 467, 494 (1991)). To establish "prejudice," a petitioner must show "not merely that the errors at his trial created a possibility of prejudice, but that they worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." Id. at 592 (quoting United States v. Frady, 456 U.S. 152, 170 (1982)).

A habeas petitioner may also overcome his procedural default by demonstrating that the court's failure to consider the claim will result in a fundamental miscarriage of justice. Hedrick v. True, 443 F.3d 342, 359 (4th Cir. 2006) (citing Coleman v. Thompson, 501 U.S. 722, 750 (1991)). The "fundamental miscarriage of justice" exception applies only to a narrow class of cases involving extraordinary instances "where a constitutional violation has 'probably resulted' in the conviction of one who is 'actually innocent' of the substantive offense." Dretke v. Haley, 541 U.S. 386, 392-94 (2004) (citing Murray v. Carrier, 477 U.S. 478, 494-96 (1986)).

### III. DISCUSSION

#### A. Ineffective Assistance of Trial and Appellate Counsel

In his first ground for relief, Petitioner contends that he received both ineffective assistance of trial and appellate counsel based on counsels' failure to challenge the discrepancy between the weight of the cocaine as measured by the police officers and the weight of the cocaine as measured by the chemist. At Petitioner's trial, the officers testified that the cocaine found in Petitioner's possession weighed .1 gram. By contrast, the chemist found the weight of the cocaine to be .09 grams. See (Doc. No. 5-12 at 7; 28-29: Trial Tr.). Petitioner argues that he

7

asked his trial lawyer to bring up this discrepancy. Specifically, Petitioner says he asked counsel to bring up the fact that the officer testified that the scales used to measure the cocaine were calibrated, which means, according to Petitioner, that the officer only weighed the cocaine. Petitioner also claims he asked his appellate lawyer to bring this issue up, but that appellate counsel told him he could only argue what was in the record.

Petitioner is not entitled to habeas relief as to this first claim. First, trial and appellate counsel <u>did</u> bring up the discrepancy between the officer's and the chemist's testimony about the weight of the cocaine, although counsel did not specifically focus on the "calibrated" scales statement. <u>See</u> (Doc. No. 5-12 at 28). At trial, officers Blackwell and Olmeda and forensic chemist Tamika Alloway established the chain of custody for the cocaine. (<u>Id.</u> at 29-33; Doc. No. 5-11 at 104-10). First, officer Olmeda testified that after the buy from Petitioner, the officers showed Officer Correa a video of the buy, and Officer Correa immediately identified Petitioner as the man selling the cocaine to the officers. (Doc. No. 5-12 at 48-49). The officers took the cocaine and put it in a small envelope. (<u>Id.</u> at 21-22). Later that day, at approximately 2:48 p.m., the officers turned the cocaine over to Property Control for evidence. (<u>Id.</u> at 30). The officers weighed the substance on the scales at Property Control and determined it was .1 gram of cocaine. (<u>Id.</u> at 28). The officers had completed an evidence envelope with a complaint number marking the time and date the evidence was acquired. They marked the evidence envelope with the complaint number 20071030115500. (Doc. No. 5-11 at 106). Alloway testified that the envelope she opened for the laboratory testing contained the complaint or control number 200710130115500. (Doc. No. 5-12 at 6). The chemist Tamika Alloway testified that it is normal for there to be a slight difference between the weight at the Property Control Room and

8

at her laboratory, since officers often weigh the bag the substance was in, while she weighs the substance itself without any packaging. (Doc. No. 5-12 at 5).

In light of this testimony, at the close of the state's evidence, Petitioner's defense counsel made a motion to dismiss, which the trial court denied. (Id. at 154-55). Petitioner did not testify in his own defense, nor did he present any evidence. (Id.). On direct appeal, Petitioner's appellate lawyer specifically argued that the evidence was insufficient to support Petitioner's convictions, stating that "the weight of the cocaine recorded by the officers was inconsistent with that recorded by the forensic chemist. Given this evidence, the State's case raises suspicion and conjecture that the substance analyzed by the lab was the same substance obtained from Mr. Wright." (Doc. No. 1-3 at 11).

The Court of Appeals adjudicated appellate counsel's claim as follows:

> Defendant also argues that the evidence was insufficient to show that the cocaine introduced into evidence was the same substance acquired from defendant. Defendant notes that nearly three hours elapsed between the transaction with defendant at 11:55 a.m. and when the crack cocaine was logged into evidence at the Property Room at 2:48 p.m. Also, defendant states that the weight of the cocaine recorded by the officers was inconsistent with that recorded by the forensic chemist. Defendant contends, given this evidence, the State's case raises suspicion and conjecture that the substance analyzed by the lab was the same substance obtained from defendant.
>
> Here, the evidence tended to show that the officers placed the cocaine purchased from defendant in a small envelope. The officers completed an evidence envelope with a complaint number marking the time and date the evidence was acquired. They marked the evidence envelope with the complaint number 20071030115500. The numbers were distinguished as follows: 2007 the year; 1030 the date; 1155 the hour; and 00 meant it was the first entered report at 11:55 a.m. on 30 October 2007. There was also a control number associated with the piece of evidence, which was 200739792. The forensic chemist testified that the envelope she opened in the laboratory contained the complaint number 20071030115500, and control number 200739792. She further testified that it is normal for there to be a slight difference between the weight at the Property Control Room and at her laboratory because the officers often weigh the bag the

9

> substance was in while she weighs the substance without any packaging. The State's evidence established a clear chain of identity between the substance defendant sold the officers and the substance tested by the forensic chemist. State v. Rogers, 43 N.C.App. 475, 480, 259 S.E.2d 572, 576 (1979). Based on the foregoing, we conclude the trial court did not err in denying defendant's motions to dismiss.

State v. Wright, 205 N.C. App. 469, 698 S.E.2d 201 (2010).

Thus, counsel <u>did</u> raise the issue of the discrepancy between the officer's and the chemist's testimony about the weight of the cocaine. Although Petitioner contends counsel should have emphasized the officer's testimony that the scales were "calibrated," he presents nothing other than his own conclusory assertion that emphasizing this point would have added anything significant to the arguments counsel already made. In sum, Petitioner has failed to show a professional dereliction on the part of either trial or appellate counsel, and there is no reasonable probability of a different result. Furthermore, Petitioner raised the substance of his current ineffectiveness contention in his MAR, and the MAR Court summarily denied the MAR on the merits. The MAR Court's adjudication was neither contrary to nor an unreasonable application of clearly established federal law, as determined by the U.S. Supreme Court, nor was it based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings.

In sum, Petitioner's first ground for relief is without merit.

**B. Petitioner's Contention that He was Subjected to Vindictive Prosecution in Violation of Equal Protection and Due Process**

In his second ground for relief, Petitioner contends that he was subjected to vindictive prosecution in violation of his equal protection and due process rights when he was indicted as a habitual felon based on such a small amount of cocaine. For the following reasons, this claim

has no merit.

First, Petitioner faces a heavy burden when bringing a vindictive prosecution claim. To establish prosecutorial vindictiveness, a defendant must show through objective evidence that "(1) the prosecutor acted with genuine animus toward the defendant and (2) the defendant would not have been prosecuted but for that animus." United States v. Johnson, 325 F.3d 205, 210 (4th Cir. 2003) (quoting United States v. Wilson, 262 F.3d 305, 314 (4th Cir. 2001)). In addition, "[t]he requirements for a selective prosecution claim draw on ordinary equal protection standards." See Rowsey v. Lee, 327 F.3d 335, 343 (4th Cir. 2003) (quoting United States v. Armstrong, 517 U.S. 456, 465 (1996)). "To succeed on a selective-prosecution claim, a defendant must demonstrate that the prosecutor's decision 'was based on an unconstitutional motive.'" Id. (quoting Wade v. United States, 504 U.S. 181, 185-86 (1992)). "[T]o dispel the presumption that a prosecutor has not violated equal protection, a criminal defendant must present clear evidence to the contrary." Armstrong, 517 U.S. at 465.

Petitioner raised the substance of his vindictive or selective prosecution claim in his MAR, and the MAR Court denied the claim, stating, stating that "[t]he motion does not state any grounds for which the Court may grant relief pursuant to N.C.G.S. § 1415, or N.C.G.S. 15A-1419." (Doc. No. 1 at 17). It is not clear from the language of the MAR Order whether the MAR Court denied Petitioner's claim on the merits or based on procedural default. To the extent that the MAR denied the claim on the merits, the MAR Court's adjudication was neither contrary to, nor an unreasonable application of, clearly established federal law, as determined by the U.S. Supreme Court, nor was the state court adjudication based on an unreasonable determination of the facts, in light of the evidence presented in the state court proceedings. Petitioner has simply

not presented any objective evidence that the prosecutor at his trial acted with animus towards him or that Petitioner would not have been prosecuted but for that animus. Furthermore, to the extent that Petitioner is attempting to raise a general equal protection or due process challenge to North Carolina's habitual felon statute, it is without merit. Being a habitual felon under North Carolina law is a status, not a crime. Once habitual felon status is achieved, it is never lost and allows a defendant's sentences to be enhanced. N.C. GEN. STAT. § 14-7.1 (2007). See State v. Patton, 342 N.C. 633, 635, 466 S.E.2d 708, 710 (1996) (being a habitual felon is not a crime but, rather, a status which subjects the individual to increased punishment). The U.S. Supreme Court has upheld as constitutional enhancements based on recidivism against ex post facto, due process, equal protection, and double jeopardy challenges. See Spencer v. Texas, 385 U.S 554, 559 (1967); Rummel v. Estelle, 445 U.S. 263, 265 (1980). See also United States v. Etheridge, 932 F.2d 318, 323 (4th Cir.), cert. denied, 502 U.S. 917 (1991).

Finally, to the extent that the MAR Court's denial of this claim was based on procedural default because Petitioner failed to raise this claim on direct appeal, Petitioner's claim is procedurally barred. Furthermore, Petitioner has not shown cause to excuse the procedural default.

In sum, Petitioner's second ground for relief is without merit.

### C. Petitioner's Contention that He Was Subjected to Selective Prosecution

In his third ground for relief, Petitioner contends that he was subjected to selective prosecution. To support this contention, Petitioner asserts that, given the small amount of cocaine, Petitioner was singled out when others similarly situated have not been prosecuted, and the prosecutor's reasons for disparate treatment were impermissible. This claim is merely a re-

phrasing or slight permutation of Petitioner's second ground for relief and is therefore denied for the same reasons Petitioner's second ground for relief fails.

### D. Petitioner's Contention that the Evidence Was Insufficient

In his fourth ground for relief, Petitioner contends that there was insufficient evidence to support his convictions and that the trial court therefore erred by denying his motion to dismiss after the state presented its evidence. First, although Petitioner raised the substance of his current insufficiency of the evidence claim on direct appeal to the North Carolina Court of Appeals, the state court records do not reveal that he filed a timely notice of appeal and/or petition for discretionary review (PDR) to the Supreme Court of North Carolina, within 35 days of the filing of the Court of Appeals' July 20, 2010, unpublished opinion. See N.C. R. APP. P. Rules 14(a) and 15(b) (2010) (15 days to file from the issuance of the Court of Appeals' mandate to file notice of appeal and/or PDR in North Carolina Supreme Court) and Rule 32(b) (unless court orders otherwise, mandate issues 20 days after written opinion filed). Therefore, Petitioner's insufficiency of the evidence claim is procedurally barred from federal habeas review. See O'Sullivan v. Boerckel, 526 U.S. 838 (1999) (claims not raised in petition for discretionary review to state's highest court from intermediate state appellate court on direct review are non-exhausted and therefore procedurally barred from federal habeas review).

Furthermore, Petitioner has not shown cause to excuse the procedural default. For instance, Petitioner cannot claim ineffective assistance of counsel because Petitioner had no right to counsel to file a notice of appeal and/or discretionary petition in the Supreme Court of North Carolina, beyond his first appeal as of right to the North Carolina Court of Appeals. See Wainwright v. Torna, 455 U.S. 586 (1982) (no right to counsel to file petition for discretionary

review to state supreme court); Ross v. Moffitt, 417 U.S. 600 (1974) (no right to free counsel beyond first appeal as of right); Coleman v. Thompson, 501 U.S. 722 (1991) (where no federal constitutional right to counsel, ineffective assistance of counsel cannot constitute "cause" for procedural default).

In any event, even if it were not procedurally defaulted, Petitioner's insufficiency of the evidence claim is without merit. On federal habeas review, the standard of review for a claim of insufficient evidence is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could find the essential elements of the crime beyond a reasonable doubt. Wright v. West, 505 U.S. 277 (1992); Jackson v. Virginia, 443 U.S. 307 (1979). A claim of insufficient evidence is necessarily a due process claim. Furthermore, it is well-established that, in reviewing claims of insufficient evidence, courts "must consider circumstantial as well as direct evidence, and allow the government the benefit of all reasonable inferences from the facts proven to those sought to be established." United States v. Tresvant, 677 F.2d 1018, 1021 (4th Cir. 1982).

Petitioner raised the substance of his current insufficiency of the evidence claim on direct appeal to the North Carolina Court of Appeals, which adjudicated and denied the claim on its merits as follows:

> Defendant first argues the trial court erred in denying his motions to dismiss because there was insufficient evidence to support his conviction for sale of a controlled substance, delivery of a controlled substance, and possession with intent to sell or deliver a controlled substance. We disagree.
>
> In ruling on a motion to dismiss, "[t]he question is whether there is substantial evidence (1) of each essential element of the offense charged and (2) that defendant is the perpetrator of the offense." State v. Lynch, 327 N.C. 210, 215, 393 S.E.2d 811, 814 (1990). "Substantial evidence is 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' "State v.

Earnhardt, 307 N.C. 62, 66, 296 S.E.2d 649, 652 (1982) (quoting <u>State v. Smith</u>, 300 N.C. 71, 78-79, 265 S.E.2d 164, 169 (1980)). The evidence is viewed "in the light most favorable to the State, and the State is entitled to every reasonable inference and intendment that can be drawn therefrom." <u>State v. Olson</u>, 330 N.C. 557, 564, 411 S.E.2d 592, 595 (1992).

It is unlawful "[t]o manufacture, sell or deliver, or possess with intent to manufacture, sell or deliver, a controlled substance[ .]" N.C. Gen. Stat. § 90-95(a)(1) (2009). "To prove sale and/or delivery of a controlled substance, the State must show a transfer of a controlled substance by either sale or delivery, or both." <u>State v. Carr</u>, 145 N.C.App. 335, 341, 549 S.E.2d 897, 901 (2001). "[T]he term 'sale,' in the context of the North Carolina Controlled Substances Act, means the exchange of a controlled substance for money or any other form of consideration." <u>Id.</u> at 343, 549 S.E.2d at 902.

Defendant argues he sold the fake cocaine for twenty dollars, but then exchanged the real cocaine for the fake cocaine. Defendant contends the exchange of the fake cocaine for the real cocaine was not a sale because the fake cocaine had no value. The evidence tended to show that during a transaction lasting approximately ten minutes, defendant accepted twenty dollars cash from Officer Blackwell and gave Officer Blackwell a fake substance in return. Defendant then promised additional cocaine because the rock delivered was broken. Less than a minute later, the officers realized they had received a fake substance, and defendant gave the officers another rock of crack cocaine. Clearly, the exchange of the real crack cocaine was part of the original transaction for which the officers paid the twenty dollars. We find the evidence presented was sufficient to show defendant received money in exchange for cocaine, a controlled substance.

Defendant also argues that the evidence was insufficient to show that the cocaine introduced into evidence was the same substance acquired from defendant. Defendant notes that nearly three hours elapsed between the transaction with defendant at 11:55 a.m. and when the crack cocaine was logged into evidence at the Property Room at 2:48 p.m. Also, defendant states that the weight of the cocaine recorded by the officers was inconsistent with that recorded by the forensic chemist. Defendant contends, given this evidence, the State's case raises suspicion and conjecture that the substance analyzed by the lab was the same substance obtained from defendant.

Here, the evidence tended to show that the officers placed the cocaine purchased from defendant in a small envelope. The officers completed an evidence envelope with a complaint number marking the time and date the evidence was acquired. They marked the evidence envelope with the complaint number 20071030115500. The numbers were distinguished as follows: 2007 the year; 1030 the date; 1155 the hour; and 00 meant it was the first entered report at

15

11:55 a.m. on 30 October 2007. There was also a control number associated with the piece of evidence, which was 200739792. The forensic chemist testified that the envelope she opened in the laboratory contained the complaint number 20071030115500, and control number 200739792. She further testified that it is normal for there to be a slight difference between the weight at the Property Control Room and at her laboratory because the officers often weigh the bag the substance was in while she weighs the substance without any packaging. The State's evidence established a clear chain of identity between the substance defendant sold the officers and the substance tested by the forensic chemist. State v. Rogers, 43 N .C.App. 475, 480, 259 S.E.2d 572, 576 (1979). Based on the foregoing, we conclude the trial court did not err in denying defendant's motions to dismiss.

Defendant also argues that his sentence as an habitual felon is void because there was insufficient evidence to support his conviction for the principal felonies. However, as set forth above, the principal felony convictions were supported by sufficient evidence. The exchange of the fake cocaine for the real crack cocaine was part of the original transaction. Therefore, the defendant received money in exchange for cocaine, a controlled substance. This argument is overruled.

State v. Wright, 205 N.C. App. 469, 698 S.E.2d 201 (2010).

The North Carolina Court of Appeals' adjudication of Petitioner's insufficiency of the evidence claim was neither contrary to, nor an unreasonable application of, clearly established federal law, as determined by the U.S. Supreme Court. Nor was the state court adjudication based on an unreasonable determination of the facts, in light of the evidence presented in the state court proceedings. Here, the prosecution presented sufficient evidence at Petitioner's trial to satisfy the due process requirements for sufficiency of the evidence under clearly established U.S. Supreme Court law.

In sum, Petitioner's fourth ground for relief is without merit.

## IV.     CONCLUSION

For the reasons stated herein, Respondent is entitled to summary judgment as to all of Petitioner's claims.

**IT IS, THEREFORE, ORDERED** that:

1. Respondent's Motion for Summary Judgment, (Doc. No. 4), is **GRANTED**.

2. Petitioner's Motion to Ask Court to Proceed (or) to Rule and Answer Questions Brought Forth, (Doc. No. 28), is **DENIED** as moot.

3. It is further ordered that pursuant to Rule 11(a) of the Rules Governing Section 2254 and Section 2255 Cases, this Court declines to issue a certificate of appealability. See 28 U.S.C. § 2253(c)(2); Miller–El v. Cockrell, 537 U.S. 322, 338 (2003) (in order to satisfy § 2253(c), a petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong); Slack v. McDaniel, 529 U.S. 473, 484 (2000) (when relief is denied on procedural grounds, a petitioner must establish both that the dispositive procedural ruling is debatable and that the petition states a debatable claim of the denial of a constitutional right).

Signed: June 6, 2013

Robert J. Conrad, Jr.
United States District Judge